**Martin FASS, Plaintiff-Appellant,**

v.

**R. G. RUEGG et al., Defendants-Appellees.**

**No. 17031.**

United States Court of Appeals
Sixth Circuit.

June 22, 1967.

Jacob A. Myers, Dayton, Ohio (Kusworm &. Myers, Dayton, Ohio, on the brief), for appellant.

Roger J. Makley, Dayton, Ohio (Joseph P. Kinneary, U. S. Atty., Dayton, Ohio, on the brief) for appellees.

Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and NEESE, District Judge.*

O'SULLIVAN, Circuit Judge.

On October 26, 1962, plaintiff-appellant, Martin Fass, was fired from his job as an aeronautical engineer for the Aeronautical Systems Division (ASD), a division of the Air Force Systems Command, located at Wright-Patterson Air Force Base, Ohio. Following review of his dismissal and denial of reinstatement by various administrative agencies, which we detail below, appellant brought suit in the United States District Court for the Southern District of Ohio, Western Division.[1] His complaint sought reinstatement with back pay; the named defendants were military officers and officials of the agencies who ordered and reviewed plaintiff's dismissal. The District Judge granted the defendants' motion for summary judgment, dismissing the complaint. Plaintiff appealed to this Court. We affirm.

By letter dated September 18, 1962, plaintiff received a six and one-half page, single-spaced "Notice of Proposed Dismissal" from the chief officer of one of ASD's engineering branches, charging that his work was inefficient: in particular, various reports he had submitted were technically incorrect, deviated from the scope of the assignments given to him, and had taken an excessive amount of time to prepare. He was also charged with displaying an improper job attitude in his approach to the tasks required of him and in his relationship with his superiors. These deficiencies were supported by illustrations setting out the standards applicable to plaintiff's work and his departures therefrom. Plaintiff responded to the "Notice" in a 41 page letter, but upon determination that his reply did not adequately refute the charges made against him, he was dismissed from his employment on October 26, 1962.

Under Department of Air Force regulations, plaintiff had a right, which he exercised, to appeal his removal to the Commander of ASD. To facilitate this appeal an Ad Hoc Committee was established to hear testimony and receive exhibits pertinent to the charges made against plaintiff, and to advise the Commander accordingly of the evidence which supported or did not support them. After the Committee conducted its hearing it submitted its findings of fact to Major General R. G. Ruegg, Commander of ASD, who sustained the removal.

Since plaintiff was a veteran, he was entitled to appeal the Commander's decision to the Chicago Regional Office of the United States Civil Service Commission (CSC). 5 U.S.C.A. § 863. This led

---

* Honorable C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Sections 1361 and 1391, Title 28 USC were relied upon for jurisdiction and venue. Section 1361 provides that,

"The district courts shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

to another hearing in Dayton, Ohio, on June 26, 1963, conducted by a representative of the Chicago Regional Office; once again the dismissal was sustained. Plaintiff next appealed to the CSC's Board of Appeals and Review in Washington, D. C., which held in an opinion issued on January 23, 1964, that "Mr. Fass's removal was procedurally adequate and for such cause as will promote the efficiency of the service."

Plaintiff then brought suit in the District Court, urging various inadequacies in the above administrative proceedings and seeking reinstatement in his job with back pay. The District Judge noted that he could not consider the merits leading to plaintiff's dismissal, found that the required procedural steps in the previous reviews of plaintiff's removal had been complied with, and awarded summary judgment to the government.

■ Preliminarily, we advise our agreement with the District Judge's statement of the limited role the courts are to play in cases where individuals dismissed from federal employment seek judicial review of their severance. Our recent decision in Baum v. Zuckert, 342 F.2d 145 (CA6, 1965), had to do with a suit by a discharged employee of the Air Force seeking reinstatement. The Civil Service Commission, as here, had upheld the discharge. Judge Phillips, speaking for this Court, took occasion to say:

"The function of a reviewing court in cases involving the discharge of civil service employees is a limited one. Powell v. Brannan, 91 U.S.App.D.C. 16, 196 F.2d 871, 873. The judicial function is to determine whether there has been substantial compliance with applicable procedures and statutes, and not to review the administrative determination as to the wisdom or good judgment of the agency in exercising its discretion. Hargett v. Summerfield, 100 U.S.App.D.C. 85, 243 F.2d 29, 32, cert. denied, 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137. The courts will not examine into the merits of the dismissal. Ellis v. Mueller, 108 U.S.

App.D.C. 174, 280 F.2d 722, cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L.Ed.2d 104; Green v. Baughman, 100 U.S.App.D.C. 187, 243 F.2d 610, 613, cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35." 342 F.2d at 147.

We may not, therefore, pass on plaintiff's claim before us that certain findings by the Ad Hoc Committee were not justified by the evidence, that plaintiff's reports were accurately prepared and pertinent to the assignments given him, and that his "improper job attitude" was attributed to him by a jealous and biased supervisor. These declarations were all presented before the various administrative agencies, and were not persuasive enough to offset the testimony and documents, adverse to plaintiff, presented at the hearings. Similarly, we cannot consider the alleged error in the proceedings before the Ad Hoc Committee caused by the refusal to allow plaintiff to inquire into his supervisor's supposed dislike for him. The development of the evidence before the Committee, which dealt mainly with the merits and deficiencies of the accused reports, was strictly within the discretion of the Committee's chairman.

■ We turn consequently, to an examination of plaintiff's allegations of procedural inadequacies at the different administrative levels. Plaintiff claims, initially, that the charges made against him in the "Notice of Proposed Dismissal" were not specific enough to provide an opportunity for him to respond to them. Air Force Manual (AFM) 40–1, chap. AF S–1.4, ¶ 4(c) does indeed require that when steps are taken to remove an employee, the statement of reasons underlying such action must be specific and detailed. But this requirement was met. The "Notice" sent to plaintiff consisted of six and one-half single-spaced typewritten pages, declaring precisely what had been required of plaintiff in his job, how he failed to meet his assigned tasks, and how errors in his past performances had been called to his attention. The document was replete with examples drawn from plaintiff's

work product which evidenced his deficiencies in one respect or another, and indicated that his job attitude—his unwillingness to cooperate with others, his refusal to carry out the assignments given him—compounded his employment difficulties. Plaintiff, we believe, was afforded fair notice of what he had to meet.

■ Plaintiff argues also that he was unable to reply properly to the "Notice" because he could not obtain an affidavit supporting his position from a John Cole, a physicist serving in a branch of ASD. The "Notice" did allow plaintiff to submit such documents. Allegedly, Cole was contacted by plaintiff's supervisor who informed him that an action was pending against plaintiff; and Cole subsequently told plaintiff when the latter came to see him in late September, 1962, that he would only comment upon the merits of the accused reports through channels. Cole later asserted that plaintiff never asked him for an affidavit, but admitted he would not give plaintiff his views on plaintiff's work at that time. Cole *did* testify, however, on behalf of plaintiff at the Ad Hoc Committee hearing. He recited that Fass's reports were in his opinion acceptable in some respects, and was critical of them in others. We cannot say that the failure of plaintiff to obtain an affidavit from Cole prior to filing a reply to the "Notice" jeopardized his procedural rights in any meaningful way. Plaintiff had the right to seek affidavits to implement his reply, but it does not follow that Cole's refusal to give him one, even though such refusal may have been instigated by a superior, in any way impaired the validity of the proceedings.

■ Plaintiff next asserts that the Commanding Officer of Wright-Patterson Air Force Base did not review the findings and procedures of the Ad Hoc Committee's hearing. That is true, but the Commander of Wright-Patterson was not the relevant party who was to pass on the merits of plaintiff's dismissal, as required by AFM 40–1, chap. A–12, § 5, ¶ 6. ASD is a division of the Air Force Systems Command, headed by Major General R. G. Ruegg; and though a tenant of Wright-Patterson, ASD is not under the jurisdiction of Wright-Patterson's base commander. In prosecuting an appeal in such situation,

" * * * the [Ad Hoc] committee will prepare a complete record of the matter and will submit the original to the commander * * *. When civilian personnel services are furnished tenant or off-base activities, of the same or different command, not under the jurisdiction of the commander, the record will be forwarded to the commander through the service commander." AFM 40–1, chap. A–12, § 5, ¶ 5.

In this case, the record, including the Ad Hoc Committee's findings of fact, was forwarded to Major General Ruegg, who sustained the decision of removal.

■ On June 26, 1963, the day that the representative of the Chicago Regional Office conducted plaintiff's second hearing, plaintiff was shown—but not given—a copy of the "Analysis of Issues" in his case. Air Force Regulations (AFM, 40–1, chap. A–2, § 2, ¶ 11) state that such an analysis is included in the complete appellate record, "pertinent parts" of which are to be furnished a discharged employee who is prosecuting an appeal. Plaintiff argues that the failure to give him the "Analysis" before the hearing date prejudiced him, because he did not know what additional evidence he would have to produce to meet the specifications the "Analysis" contained. The regulations themselves are unclear, because of certain typographical errors, as to just what the "pertinent parts" of a record are that are to be given an employee; but Air Force Civilian Personnel letter 1–63, dated January 25, 1963, was circulated to clear up any confusion in the matter. The letter indicates that a discharged employee, seeking reinstatement, is entitled to a transcript of the (Ad Hoc Committee) hearing and exhibits introduced thereat, and a copy of the hearing committee's findings of fact as an inclosure to the commander's decision. Plaintiff

received these items, and we consider that they constituted the "pertinent parts" of the record, as defined by the Air Force regulations.

■ Plaintiff further contends that the proceedings before the Chicago Regional Office repesentative were deficient in two other respects—first, because the representative did not consider additional exhibits introduced before him and commented upon in subsequent briefs of plaintiff. The opinion of the Chicago Regional Office, however, fairly read, indicated that such new evidence was reviewed but found not to add anything of significance to what had already been adduced before the Ad Hoc Committee.

Second, plaintiff submits that the Chicago Regional Office of the Civil Service Commission erroneously limited the scope of its review. This is portrayed by the following recital in the final decision of the Board of Appeals and Review:

"The Chicago Regional Office obtained a copy of the agency's first level appellate record, conducted a personal investigation, conducted a personal hearing, and received from representatives of both sides briefs and reply briefs with additional exhibits. Upon the record, thus assembled, the Regional Office decided to restrict its appellate review to the situation as it existed on the date of the removal. Apparently this was done on the erroneous assumption that the procedures of the agency's first-level appellate review and the results of that review were not for consideration on appeal to the Commission."

The Board of Appeals, however, proceeded to review the entire administrative record, including the area not fully examined by the Civil Service Commission's

Chicago Regional Office, saying "The Board of Appeals and Review has fully considered the appellate record as developed in the Chicago Region and as augmented by your [plaintiff's counsel] notice of appeal submitted with your letter of October 3, 1963 * * *," and ended the matter with the final administrative ruling:

"Upon the entire appellate record and for the reasons indicated above, the Board of Appeals and Review finds, as did the Regional Office, that Mr. Fass's removal was procedurally adequate and for such cause as will promote the effciency of the service. The Regional Office decision to approve the removal action is affirmed."

■ We consider, therefore, that if there was a technical error in the Regional Office's limitation upon its review, it was of little significance. It did not impair the substantiality of the Civil Service Commission's compliance with prescribed procedures.

As we have indicated, the District Judge dispatched this matter on the government's motion for summary judgment. He had before him the administrative record of the removal and agency proceedings, and his decision was based on a review of those proceedings and not, as plaintiff contends, solely on the government's pleadings and briefs.

■ Summary judgment is an appropriate means of resolving issues of law like the one presented here—whether there was substantial administrative compliance with applicable regulatory and statutory procedures. Seebach v. Cullen, 338 F.2d 663, 664, (CA9, 1964), cert. den. 380 U.S. 972, 85 S.Ct. 1331, 14 L.Ed.2d 268.

The judgment of the District Court is affirmed.