**Barney COHEN**

**v.**

**Robert S. McNAMARA, Secretary of Defense, and Director, Defense Contract Administration Services, Defense Supply Agency, and Director of Personnel Department of Defense, and Director, Office of Industrial Relations, Defense Personnel Support Center, and Director, Headquarters Defense Contract, Administration Services Region, Philadelphia, and J. H. Macy, Jr., Robert Hampton, and L. J. Andolsek, Members, United States Civil Service Commission.**

**Civ. A. No. 42227.**

United States District Court
E. D. Pennsylvania.

March 28, 1968.

Melvin Rubin, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., for defendant.

## OPINION

TROUTMAN, District Judge.

This matter is before the Court for disposition of a motion and a cross-motion for summary judgment filed by the plaintiff and defendants respectively pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

The plaintiff has been employed by the United States Government for the past thirty years. He is an honorably discharged combat veteran from the United States Army and qualifies as a "preference eligible" within the meaning of the Veterans Preference Act.[2] At all relevant times, his character and the performance of his work have been exemplary, and he was awarded a certificate

for continuous and consistent high level competence in the performance of assigned duties.

In May 1961, plaintiff was assigned to the position of Chief of the Readjustment Branch of the Contracts Division of the Philadelphia Air Procurement District. After serving in that capacity for approximately three years, he was assigned to the position of Chief of the Termination Settlement Division, Directorate of Contract Administration in Philadelphia. In both instances, his Civil Service classification was GS–13. On April 6, 1965, the position of Chief of the Termination Settlement Division was classified as a GS–14. Rather than promote plaintiff to Grade GS–14, the defendants removed him from his position as Chief and reduced him in rank to Deputy to the Chief of the Termination Settlement Division. Plaintiff contends that the refusal by defendants to promote him from GS–13 to GS–14 was a violation of his rights under the Civil Service Act and the Rules and Regulations promulgated thereunder in that there was no "significant change in [the] duties or responsibilities" of the position of Chief of the Division.[3] Plaintiff further contends that his reduction in rank from Chief to Deputy to the Chief was a violation of his rights under the Veterans Preference Act in that he did not receive proper statutory notice "stating any and all reasons, specifically and in detail, for the proposed action" and in that the reduction in rank was not

---

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331(a), 1361, and 1391(e).

2. 5 U.S.C. § 2108 (formerly 5 U.S.C. § 851):
  "For the purpose of this title—
  "(1) 'veteran' means an individual who—
  "(A) served on active duty in the armed forces during a war, in a campaign or expedition for which a campaign badge has been authorized, or during the period beginning April 28, 1952, and ending July 1, 1955; or
  \* \* \* \* \*
  "(3) 'preference eligible' means—
  "(A) a veteran as defined by paragraph (1) (A) of this section."

3. Federal Personnel Manual 335–19 (March 11, 1965):
  "(e) \* \* \* Merit promotion procedures are not applicable when a decision is made to upgrade a position without significant change in duties or responsibilities, either on the basis of a new classification standard or as the result of an original classification error, provided the incumbent meets the legal requirements and qualifications standards for promotion to the higher grade. In such cases the incumbent shall be noncompetitively promoted unless removed from the position by appropriate personnel action. \* \* \*"

"for such cause as will promote the efficiency of the service." [4]

■ It appears from the record [5] that on April 20, 1964, the Secretary of Defense decided to consolidate the Contract Administration Services of the Army, the Navy, the Air Force, and the Defense Supply Agency under common management for efficiency and economy reasons. Implementation of the consolidation was decreed on a phased basis over two years. The plaintiff was Chief of the Readjustment Branch of the Contracts Division of the Air Force's Philadelphia Air Procurement District and pursuant to the plan of consolidation, on November 1, 1964, was transferred to the position of Chief of the Termination Settlement Division. As of November 1, 1964, there had not been final approval at the headquarters' level of a permanent manning table or joint table of distribution. When the permanent manning table was finally approved, the position of Chief of the Termination Settlement Division was designated as a GS–14, and on April 8, 1965, a GS–14 Contract Specialist from a disbanded Army installation was offered and accepted the position under the pertinent transfer of function regulations. The plaintiff was then reassigned from the position of Chief to Deputy Chief of the Termination Settlement Division. Since it was felt that the latter position was subordinate to the former, the reassignment was completed under a reduction in rank procedure allegedly in accordance with the pertinent Civil Service regulations. 5 C.F.R. § 752.201 et seq. The defendants contend that their refusal to promote plaintiff and their having reduced him in rank pursuant to the plan of consolidation did not deprive the plaintiff of any of the rights he now seeks to assert.

Plaintiff has exhausted the applicable grievance procedures and has appealed unsuccessfully to the Civil Service Commission. He has filed this suit, naming certain Defense Department officials and Civil Service Commission members as defendants,[6] requesting the Court to order

---

4. 5 U.S.C. § 7512 (formerly 5 U.S.C. § 863):

"(a) An agency may take adverse action against a preference eligible employee, or debar him for future appointment, *only for such cause as will promote the efficiency of the service.*

"(b) A preference eligible employee against whom adverse action is proposed is entitled to—

"(1) at least 30 days' advance written notice, except when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, *stating any and all reasons specifically and in detail, for the proposed action.*" (Emphasis supplied.)

5. The plaintiff takes the position that the administrative record filed by the defendants and considered by the Civil Service Commission in denying plaintiff's appeal is not properly before this Court in that F.R.Civ.P. 56(c) provides that summary judgment will be rendered only " * * * if the pleadings, depositions and admissions on file, together with the affidavits, if any, show * * * that the moving party is entitled to a judgment as a matter of law". The plaintiff does not contend that the facts as de-

veloped by the administrative record and the documents attached thereto are in any way erroneous; rather, he contends that the administrative record is unsupported by affidavits as required by Rule 56(e). Congress has provided that where a Court reviews the decision of an administrative agency the Court "shall review the whole record". 5 U.S.C. § 706 (formerly 5 U.S.C. § 1009). In construing Rule 56(e) the Courts have held that "[p]roperly authenticated * * * administrative * * * records may be proffered in evidence on the motion for summary judgment whenever they are relevant". 6 Moore, Federal Practice § 56.22(1), at 2814, 2815 (2nd Ed. 1966). The administrative record presently under consideration has been certified to by James C. Spry, Executive Assistant to the Civil Service Commissioners, and is therefore properly before this Court.

6. When suit was initially filed the plaintiff attempted to sue the Civil Service Commission *eo nomine.* The government took the position that the Civil Service Commission is an indispensable party and since it is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission must be brought against the in-

the defendants to reassign him to the position of Chief of the Termination Settlement Division; that such reassignment be made retroactive to September, 1965; that he be compensated for back pay; and that he retain the position of Chief at the GS–14 level.

The sum and substance of plaintiff's argument is that as between the position of Chief at the GS–14 level and the position of Chief which he held at GS–13 level, there was no significant difference in that the duties and responsibilities remained essentially the same and that under such circumstances the "outgrowth" principle would necessitate his being retained in the position of Chief and mandate his promotion to GS–14. See Footnote 3. On the other hand, the government contends that the GS–14 position was a significantly different position in an altogether new organizational structure.

■ Although the Civil Service Commission did not refer to or discuss the alternate ground of decision relied upon at the lower decisional levels, we think it has considerable merit. Pursuant to the plan of consolidation transfers of functions were made into the consolidated unit beginning November 1, 1964. Admittedly, preference eligibles are entitled to a certain degree of priority where transfers of functions are concerned. 5 U.S.C. § 3503 (formerly 5 U.S.C. § 861(a)). However, transfer of functions regulations limit the degree of priority of a preference eligible to a continuing position of like grade and pay. See Administrative Record p. 126. Since the transfers of functions involved in the case at bar were two phased—the first involving all those people initially identified with the transfer and the second involving all those people subsequently identified with the transfer—plaintiff's assignment to

the position of Chief as of November 1, 1964, was temporary in nature in that it was subject to change depending upon the rank and grade of those people subsequently identified with the second phase of the transfer of functions. Plaintiff's assignment to the position of Chief being temporary in nature, he was not deprived of any rights when he was thereafter reduced in rank in the course of the second phase of the transfer of functions since transfer of function regulations were complied with in that plaintiff retained the same grade rating and same pay level.

■ Plaintiff contends that his assignment to the position of Chief was permanent in nature since he was not otherwise informed. The permanent or temporary nature of a Civil Service position cannot depend upon whether the person appointed was specifically informed of its true nature. If it were to so depend, Civil Service positions would be considered permanent not because they were intended to be permanent, but because, through oversight or error, the person appointed was not specifically notified of its temporary nature. This is not to say that the Defense Department may arbitrarily or indiscriminately designate a position as temporary after it fully intended it to be permanent. But where, as here, from the very outset the Defense Department contemplated a two-phased transfer of functions, the first phase being subject to change or modification, and through oversight or error failed to notify plaintiff of the consequent temporary nature of his position, it can hardly be argued that the Defense Department arbitrarily or indiscriminately modified what was initially intended to be a permanent position. Indeed, recognizing that there were misconceptions concerning the nature of the positions assigned as of November 1, 1964, a meeting attend-

dividual Commissioners as members of the Commission. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). The plaintiff having failed to join the individual members of the Commission as parties, the government filed a motion to dismiss this action. Since

the filing of their motion the government has agreed by stipulation, which has been made a part of this record, to have the caption of the case amended to include the individual members of the Commission and to accept service of process on their behalf.

ed by plaintiff was held on November 20, 1964, at which those present were advised of the temporary nature of the positions they received as of November 1, 1964.

■ Proceeding on the assumption that plaintiff's assignment to the position of Chief was permanent in nature, the Civil Service Commission at both the regional and national levels concluded that plaintiff was not entitled to a non-competitive promotion. They are much more competent to decide such questions than are we and it would be disruptive of good order for us to undertake the task which the law commits to them. We do not mean to suggest that conclusions of administrative agencies are not subject to judicial review. But our scope of review of questions of this kind is necessarily limited. 5 U.S.C. § 706 (formerly 5 U.S.C. § 1009(e)); Powell v. Brannan, 91 U.S.App.D.C. 16, 196 F.2d 871, 873 (1952); Comisky v. Rice et al., 233 F. Supp. 190 (E.D.Pa.1964).

■ It is readily apparent that this Court is not vested with any authority in such review to question the agency's decision as to the need for certain types of employees, Alexander v. United States, 149 Ct.Cl. 445 (1960); nor to question the qualifications of such employees, Powell v. Brannan, supra; and, of course, it will not inquire into the merits of a decision to reorganize an agency, Umbeck v. United States, 149 Ct.Cl. 418 (1960). To the extent that such issues are implicit in plaintiff's claim, he is foreclosed from asserting them.

■ It is equally apparent that this Court has no authority to question the determination of the agency that plaintiff had no right to a non-competitive promotion where there exists a rational basis for its conclusion; or, stated another way, this Court has no authority to question the determination of the agency that plaintiff had no right to a non-competitive promotion where the action by the agency is neither arbitrary nor capricious. 5 U.S.C. § 706; Cutting et al. v. Higley, Administrator of Veterans' Affairs, et al., 98 U.S.App.D.C. 288, 235

F.2d 515 (1956); Wagner v. Higley, Administrator of Veterans' Affairs et al., 98 U.S.App.D.C. 291, 235 F.2d 518 (1956); Comisky v. Rice et al., supra. An examination of the official descriptions of record of the positions in question indicates that the Chief position at the GS–14 level supervises a group of GS–11 and GS–12 Contract Termination Specialists, through an intermediate supervisor at the GS–13 level; whereas the Chief position at the GS–13 level did not provide for any such intermediate level of supervision. In addition, while the GS–14 Chief position includes the exercise of field surveillance over regional field components and the evaluation of field programs, there is no such counterpart in the description of the GS–13 Chief position. There being a significant difference between the duties and responsibilities of the position of Chief at the GS–14 and GS–13 levels, plaintiff was not entitled to a non-competitive promotion to GS–14.

■ Plaintiff contends that the distinctions relied upon are distinctions without a difference in that as Chief he performed the duties of what is now Chief and Deputy Chief and in that there actually are no field components or programs which need to be evaluated or over which surveillance needs to be exercised. But this argument loses sight of the fact that at the present time there is in fact an intermediate supervisory level and there may eventually be field programs and components which are officially a part of the GS–14 job description. It may well be argued that there are grounds for a reasonable difference of opinion on this question. But where, as here, there exists a rational basis for the conclusions of the administrative agency, this Court should and does affirm even though different conclusions could be drawn from the record. Studemeyer v. Macey, 116 U.S.App.D.C., 120, 321 F.2d 386 (1963); certiorari denied 375 U.S. 934, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963).

Having concluded that plaintiff was not entitled to a non-competitive promo-

**314**

tion, it was necessary for the employing agency to effect a personnel action to change his official position assignment. The employing agency elected to reassign plaintiff to the Deputy Chief GS–13 position. In that this constituted a reduction in rank within the meaning of the Veteran's Preference Act, it was subject to the provisions of 5 U.S.C. § 7512 and the regulations promulgated thereunder. Plaintiff contends that neither the statutory provisions nor the regulations were complied with in that his reduction in rank was not "for such cause as will promote the efficiency of the service" and in that he was not given advance written notice of his reduction in rank "stating any and all reasons, specifically and in detail, for the proposed action".

To comply with the statutory requirement of notice, it is essential that a veteran be supplied with sufficient information to afford him a fair opportunity to demonstrate his personal fitness for a particular job. Admittedly, the reasons given plaintiff for his reduction in rank were short, concise and to the point. However, in our view, they were stated in a manner obviously susceptible of understanding and afforded the plaintiff an opportunity for refutation. This is especially true in view of prior communications from the agency to the plaintiff which explained "specifically and in detail" the transfer of functions alluded to in the notice received by plaintiff and which furnished the basis for plaintiff's reduction in rank. Moreover, plaintiff's awareness of the reasons for the reduction in rank is further demonstrated by his unusually detailed and delineated written reply to the proposed reduction in rank of July 20, 1965, which we note is free from any assertion of lack of particularity of reasons stated.

■■■ Plaintiff contends that although he knew the reasons, it does not necessarily follow that the statutory notice requirement of specific and detailed reasons has been met. But this overlooks the fact that since the statutory notice requirement is designed to enable the plaintiff to determine the reasons for his reduction in rank and to act accordingly, where the notice afforded plaintiff is sufficiently detailed so as to inform one in his position, with his background and prior communications with the agency, of the reasons for his reduction in rank, the statutory notice requirement has been satisfied. Baughman v. Green, 97 U.S.App.D.C. 150, 229 F.2d 33 (1956); Williams v. Cravens, 93 U.S.App.D.C. 380, 210 F.2d 874 (1954); Seebach v. Cullen, 338 F.2d 663 (9th Cir. 1964).

■■■ Whether plaintiff's reduction in rank was for such cause as will promote the efficiency of the service must of necessity depend upon whether he was entitled to a non-competitive promotion to GS–14. Having concluded that the Defense Department had every right to create the GS–14 Chief position and having concluded that plaintiff was not entitled to a non-competitive promotion to that position, it then being absolutely essential as an administrative matter that plaintiff be reduced in rank, we cannot help but conclude that plaintiff's reduction in rank was "for such cause as will promote the efficiency of the service".

It is self-evident that a reorganization involving the consolidation of the personnel of four Contract Administration Agencies cannot be accomplished without readjustments which may prove unpalatable to some of the affected personnel.

"Anyone who has a family recognizes that hardships may result when the head of the family is put to the choice of moving to another city or relinquishing his position when the Government agency in which he is employed decides to transfer his functions elsewhere. The consequences of such a move may include a departure from surroundings in which the family is happy and well adjusted, a transfer of children to other schools, financial losses, and increased living costs. Substantial as these hardships often are, they do not constitute a type of damage for which this court can grant relief." Colbath et al. v. United States,

341 F.2d 626, 632, 169 Ct.Cl. 414, 424 (1965).

Present plaintiff has not experienced any of the hardships suffered by plaintiffs in the *Colbath* case; he has not lost his grade rating or level of pay and he continues to do the same kind of work; in fact, this readjustment affected little more than his job title. Whether he was entitled to a non-competitive promotion to GS–14 must be viewed in conjunction with the rights of others who were involved in this consolidation. Viewed in these dimensions, it is abundantly clear that the agency action was proper and its affirmance by the Civil Service Commission must be affirmed by this Court.

### ORDER

And now, this 28th day of March, 1968, it is ordered that plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.